UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES J. SKORUPSKI, JR.,

    Plaintiff,

v.                                          Case No. 1:08-cv-848
                                                 Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).[1]

Plaintiff was born on December 2, 1964 (AR 50). He completed the 12th grade and also completed vocational "robot tech training" in 1999 (AR 74).[2] He alleged a disability onset date of January 18, 2004 (AR 50). Plaintiff had previous employment in manufacturing as a weld tech, robot tech, spray painter, shipper, upholsterer, assembler and material handler (AR 130, 462-64). Plaintiff identified his disabling conditions as right wrist Kienbock's disease,[3] left wrist tendonitis,

---

[1] Plaintiff was represented by counsel at the administrative hearing on June 6, 2007 (AR454-89). However, plaintiff was not represented by counsel in his request for review by the Appeals Council (AR 7).

[2] Citations to the administrative record will be referenced as (AR "page #").

[3] Kienbock's disease, also known as lunatomalacia, is defined as a "slowly progressive osteochondrosis of the semilunar (carpal lunate) bone." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 484. "Osteochondrosis" is defined as "a disease of the growth or ossification in children which begins as a degeneration or necrosis followed by regeneration or recalcification." *Id.* at 1200.

carpal tunnel syndrome, depression, type II diabetes, high blood pressure, alcoholism and attention deficit disorder (ADD) (AR 68). On September 19, 2007, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 12-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 18, 2004, and that he met the insured status requirements of the Social Security Act through December 31, 2009 (AR 14). At step two, the ALJ found that plaintiff suffered from severe impairments of: alcohol abuse; depression; attention deficit disorder; anxiety; chondromalacia of the right knee; obesity; carpal tunnel syndrome; and Kienbock's disease (AR 14). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 15).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC)

> to perform light work with the following restrictions: occasionally climb, balance, stoop, kneel, crouch or crawl; frequently finger, handle or feel with both upper extremities; unskilled work; and work in environments that do not involve concentrated exposure to temperature extremes, humidity or any exposure to hazards.

(AR 16). The ALJ also found that plaintiff was unable to perform his past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work, which includes the following positions in the regional economy (identified as Michigan): assembler (14,000 jobs); inspector/sorter (6,800 available jobs); machine operator (14,000 available jobs); and hand packager (6,000 available jobs) (AR 21). Accordingly, the ALJ determined that plaintiff was not under a disability at any time from January 18, 2004 through the date of the decision (AR 22).

4

## III. ANALYSIS

Plaintiff's "letter brief" does not include a statement of errors as required by the court's order directing filing of briefs. *See* docket no. 8. However, plaintiff contends that he is disabled due to the following: shoulder problems; carpal tunnel syndrome in hands; intersect tendonitis in left hand; Kienbock's disease in right wrist; and problems with his right knee "locking up." *See* docket no. 9. Plaintiff also presents new evidence with respect to January 16, 2009, surgery for a rotator cuff tear in his right shoulder. *See* docket no. 9-2.[4]

### A.    Carpal tunnel syndrome, tendonitis and Kienbock's disease

Richard C. Gause, M.D., performed a consultative examination of plaintiff on December 1, 2004 (AR 284-89). The doctor noted that plaintiff reported a major problem with carpal tunnel syndrome and a fractured right wrist, as well as hypertension, diabetes and ADD (AR 284). Plaintiff's grip strength on his right hand was decreased to about 50% of normal (AR 285). The doctor found no evidence of joint laxity, crepitance, or effusion (AR 285). The doctor found that plaintiff had "a very definite impairment of the use of his hands, although the left side is far less involved than the right" (AR 287). The test results for his upper extremity reflexes were normal, and plaintiff had the ability to perform all neurologic and orthopedic maneuvers (e.g., sit, stand, carry, push, pull, button clothes, tie shoes, dress/undress, open a door, make a fist, pick up a coin, pick up a pencil, write, climb stairs, get on and off of the examining table) (AR 288). A physical RFC assessment by a DDS physician Shahida Mohiuddin, M.D., noted that plaintiff had decreased grip strength in his right hand and decreased range of motion in right wrist, and that he should not

---

[4] Plaintiff did not dispute the ALJ's findings with respect to his other alleged conditions, which include alcohol abuse, depression, ADD, anxiety and obesity. Accordingly, the court deems these issues waived.

use power tools with that hand (AR 293, 295). Dr. Mohiuddin also noted that an examining physician determined on October 16, 2000 (approximately 3 1/2 years before the alleged disability onset date) that plaintiff should be limited to no forceful gripping, pulling or twisting with the right wrist (AR 296).

The ALJ observed that plaintiff could lift 40 to 50 pounds at a time and ten pounds regularly and demonstrated the ability to use his hands during the examination with Dr. Gause (AR 19, 284-89, 473). Plaintiff admitted to working part-time as a janitor (three to four hours a day), leading the ALJ to observe that such a job "requires the use of his hands" (AR 19, 461). The ALJ also noted that back in June 1992, a hand surgeon opined that plaintiff's problem with his right wrist caused by Kienbock's disease and secondary degenerative arthritic changes, "is not a problem that is going to go away" (AR 159). The surgeon determined that plaintiff needed to disqualify "long term" from high intensity pulling and wrist action jobs such as upholstery (AR 159). The ALJ found this opinion, which predated plaintiff's alleged disability onset date by more than a decade, as consistent with plaintiff's current complaints and limitations (AR 20). Based on this record, the ALJ determined that plaintiff could only occasionally climb, balance, stoop, crouch, kneel and crawl, and that he could only frequently handle, finger, and feel with both hands (AR 16, 186). While the ALJ did not find that plaintiff had specific limitations with respect to his right hand, substantial evidence supports the ALJ's RFC determination with respect to the use of his hands.

**B.  Right knee**

The ALJ noted that in August 2006, plaintiff suffered from a knee problem, which included arthritic changes and a history consistent with meniscus disease (AR 18, 301). In October 2006, plaintiff's physician, Dr. Olson, stated that an MRI indicated that a possible tear in the medial

meniscus of plaintiff's right knee (AR 301). The ALJ's decision refers to an MRI from February 2007 and the doctor's determination that plaintiff needed to see an orthopedist for his right knee as well as his hand (AR 18).[5] However, there was no record of any further medical treatment for this condition (AR 18). Plaintiff testified that he could walk 1/4 of a mile and stand 1 to 1 1/2 hours (AR 19, 472). Plaintiff's only limitations with his right knee is that it "clicks" when climbing stairs and that he has difficulty kneeling and crawling (AR 19, 473). Despite this testimony, plaintiff did not express any problems with his knee when examined by Dr. Gause (AR 284-89). Based on this record with respect to plaintiff's right knee, the ALJ's RFC determination, which limits plaintiff to occasionally climb, balance, stoop, kneel, crouch or crawl, is supported by substantial evidence.

### C. Right shoulder

At the hearing (held on June 6, 2007), plaintiff advised the ALJ that he had an appointment with an orthopedic surgeon later that month (on June 26, 2007) (AR 457). Plaintiff clarified that this appointment involved a "right shoulder tear" (AR 466, 474). Plaintiff testified that the problem was so bad that he sometimes uses his left arm to move his right arm (AR 475). The ALJ's decision did not address plaintiff's alleged "right shoulder tear." Plaintiff did not complain of his right shoulder at Dr. Gause's consultative examination, and the doctor's test results indicated that the range of motion for his shoulder fell within normal limits (AR 284-89). In addition, plaintiff stated that he can tend to his personal care, prepare meals, do the dishes, do laundry, make a bed, and take out the garbage (AR 475-77). Based on this record regarding plaintiff's right shoulder, the ALJ's RFC determination is supported by substantial evidence.

---

[5] The ALJ cites Exhibit 19F; however, these records do not appear in that exhibit(AR 445-53). The ALJ may be referring to Dr. Olson's notes from February 12, 2007 (AR 341).

### D. The ALJ's decision

The ALJ's findings with respect to plaintiff's carpal tunnel syndrome, tendonitis, Kienbock's disease, right knee and right shoulder are supported by substantial evidence in the administrative record. For these reasons, the ALJ's decision denying benefits should be affirmed.

### E. New evidence

Finally, plaintiff has submitted copies of medical records which were not made available to the ALJ. On June 26, 2007, plaintiff was examined by an orthopedic surgeon, James E. Bakeman, M.D., for bilateral shoulder pain, right wrist pain, bilateral hand pain and right knee pain. *See* docket no. 9-2. Plaintiff has omitted the second page of the examination, which appears to contain the examination results. *Id.* On November 11, 2008, plaintiff was diagnosed with a "right rotator cuff tear," "possible bilateral carpal tunnel syndrome," a "right stage 3B collapse from Kienbock disease," and a "questionable meniscal tear of his right knee." *Id.* Plaintiff's treatment plan was to begin with the rotator cuff repair, followed by treatment for bilateral carpal tunnel syndrome and treatment for the Kienbock disease. *Id.* At that time, the doctors would consider addressing his right knee "if this becomes more symptomatic." *Id.* The records also reflect that plaintiff underwent an outpatient procedure performed on January 16, 2009, to repair the right rotator cuff tear. *Id.*

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d

709, 711 (6th Cir.1988) (per curiam).[6]  Sentence six provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is <u>material</u> and that there is <u>good cause</u> for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g) (emphasis added).  In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

For purposes of a remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001), quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 279 F.3d at 357.  Good cause is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability."  *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986).  In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore*, 865 F.2d at 711.  The party seeking the remand bears the burden of demonstrating that the good cause and materiality

---

[6] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand).  *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

9

requirements are met. *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff has not established either materiality or good cause. Plaintiff's June 26, 2007 examination by the orthopedic surgeon, and his subsequent treatment and surgery, appear to be a continuation of plaintiff's treatment for his alleged disabling conditions. This is not a case where a Social Security claimant solicited a medical opinion after denial of benefits for the sole purpose of proving disability. However, plaintiff has failed to demonstrate that the new evidence would have made a difference in the ALJ's decision. As the court previously observed, plaintiff has not been candid regarding the results of his June 26th examination, having omitted the page of the report which contains the examination results. Absent a complete copy of the June 26th examination results, the court can only speculate as to whether the ALJ would have reached a different disposition of the disability claim if presented with this new evidence.

Furthermore, plaintiff has not demonstrated "good cause." At the administrative hearing, the ALJ was aware of plaintiff's June 26th examination and stated that he was "leaving the record open for the attorney to submit more stuff" (AR 466-67, 488-89). Plaintiff's counsel did not submit a record of the June 26th examination, even though the ALJ left the record open and did not issue his decision until September 19th. An attorney's failure to provide evidence to the ALJ does not constitute "good cause" for purposes of a sentence-six remand. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 149 (6th Cir. 1996).[7] Accordingly, plaintiff is not entitled to a sentence-six remand in this matter.

---

[7] As the court previously observed, it is unclear whether the June 26th examination report supported plaintiff's disability claim. It is possible that plaintiff's attorney reviewed the report and made a strategic decision not to supplement the record.

## IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  January 19, 2010                             /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).